Case number 25-1201 Marvin Cotton et al. v. Donald Hughes et al. Argument not to exceed 15 minutes per side. Mr. Campbell, you may proceed for the appellants. Good afternoon, Your Honors. Kevin Campbell on behalf of the appellants, Officers Bates and Officers Hughes. I have reserved 6 minutes for rebuttal. I have nothing really to add to the extraordinarily thorough principle brief that was filed prior to my involvement with this case, especially as it relates to Officer Bates. And so with my limited time that I have here today, to the extent the Court is willing to indulge me, I'd like to focus on those matters that were set forth in the reply that I did draft. And the thrust of that argument is that even if we accept, you know, setting aside Heck, setting aside collateral estoppel, setting aside whether Curt Naird's affidavit is hearsay, setting aside those issues, if we accept the facts as set forth by the plaintiff as true, then nonetheless, at least Officer Hughes is entitled to qualified immunity as to the claims advanced by these plaintiffs. Turning first to the Brady claim advanced against Officer Hughes, that claim is centered on two pieces of evidence, the Curt Naird affidavit as well as the Ellis Frazier affidavit. But importantly, neither of these two pieces of evidence accepted as true establish a Brady claim. The Curt Naird affidavit doesn't even mention Officer Hughes. Rather, Mr. Naird averts that he provided a statement to Officer Bates in February of 2001. Didn't Officer Bates say that it was his practice to, if he received such information, that he would be required, in fact, to share that information up the chain of command, and in this case, to the officer who was in charge of the investigation? You are absolutely correct. That is what he testified to. However, I would respectfully submit that in a situation of supervisor liability, what plaintiff would have to show is that Officer Hughes implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers, and that is Young v. Campbell County, Kentucky. I guess I didn't see this in your briefing. It sounds like what you're saying is that Officer Hughes, if he received that information, didn't have an independent responsibility to share that information. You're suggesting that the theory is only one of supervisory liability? Well, our position is that it's mere hypothetical knowledge that is being imputed to... Well, it's a dispute of fact, is it not, if Bates testified in the way that he did? Well, respectfully, I would submit not, because Officer Bates never said that he received the Naird affidavit, that he never took a statement. But the district court found that it was a genuine issue of material fact, did it not? Yes, and I think this court has held, though, that notwithstanding the fact that a district court finds a question of material fact, this court nonetheless has the authority and the power to look at the record to determine whether there are gaps and whether there are genuine issues, excuse me, whether the questions, the fact disputes found by the trial court are indeed genuine and material. That is a legal issue, and Turner v. Scott is one of the cases that I would point to that stands for the proposition that merely finding a question of fact doesn't foreclose the appellant from pointing to gaps in the record, and here it would be a hypothetical, not a fact that we must accept as true, and using those as a basis to argue that there is no Brady claim. There are no other facts in the record, aside from the Curt Naird affidavit, that demonstrates that Officer Hughes actually knew about it. And you're talking about the Naird affidavit? Yeah. Am I pronouncing it correctly?  Why isn't that sufficient? I think it would be sufficient as Officer Bates respectfully, but not as it relates to Officer Hughes, because Hughes is not mentioned in the affidavit and is important. In 1983 context, the plaintiff must establish that must personally tie the defendant to the alleged constitutional violation. There has to be an active level of unconstitutional conduct, and here it's just merely hypothetical. What, as I understand it in the district court's ruling, it is, well, it just may be the case that Officer Bates shared that evidence with Officer, had he received it, which he denied receiving it, with Officer Hughes. That is a sheer hypothetical. There's nothing in the record to substantiate. So is your argument to one insular claim, because the evidence against Hughes as officer in charge is fairly significant, primarily based on the tape with the private investigator, is that right? Correct. What he talked to, he was heard saying that Lockhart never actually saw Cotton but did see the people who killed him. What is the interrelationship of the various claims when you have that type of evidence against the officer in charge? Why is there not in all of those claims an inherent dispute of facts? I think that in relation to the Hughes tape in the context of the Brady claim, the plaintiffs have waived any argument that the trial court should have considered the Officer Hughes tape that was surreptitiously taken by Myrie, his full name escapes me, in reference to the Brady claim. The appellees do not argue here now that the court ought to have considered that evidence, and of course the court didn't. Judge Levy correctly concluded that this evidence, in the context of the Brady claim, that this evidence, the tape conversation, does not demonstrate that Officer Hughes withheld evidence. What evidence did Bates withhold? First of all, the Hughes tape occurred about a decade after, it was taken about a decade after the events. It doesn't speak to what he knew at that time, he being Officer Hughes. At bottom, I think the district court correctly concluded that it's just mere speculation. Again, just to come full circle, that's not been challenged by the appellee. That's in reference to the Brady claim. Now, I recognize with respect to the malicious prosecution claim, that comes into play. Now, in terms of the, I see that I have about 25 seconds left, in reference to the Officer Hughes and the Brady claim predicated upon the Ellis Frazier affidavit, it's our position that the Ellis Frazier affidavit at best would establish a fabrication claim. The facts implicate, accepting it as true, that that falsified testimony was placed in the trial court. It has nothing to do with withholding of evidence, and the court wrongly decided that that is sufficient evidence to state a Brady violation. I do note that the court correctly, I'm all out of time. I'll let you conclude that.  I think the court did correctly conclude, however, that the fabrication claim against Officer Hughes fails. I appreciate your time. Thank you. Good afternoon, may it please the court. Beth Whitman appearing on behalf of the plaintiffs. Just to kind of jump in here, I agree, I think the trial court clearly held that there were issues of fact for the jury. That's not something that the court obviously has jurisdiction over. With respect to that evidence though, it's not just that Mr. Hughes was in fact the officer in charge, and that Bates would have told him pursuant to internal rules of the Detroit Police Department. But it's also that he was involved in the trial. He is the one that walked Mr. Frazier to the courtroom, and part of the Frazier affidavit is that he was told, this is who you need to look for, this is who you need to point out in the courtroom. Here is a photograph of somebody. This is the person that you're going to identify as the shooter. And that's precisely, Mr. Cotton was the one that provided that testimony. So there is evidence in the record that demonstrates that Mr. Hughes didn't just have any sort of supervisory role or anything like that. He knew, or he was actively participating in the fabrication of that claim. And with the NARD affidavit as well, yes, he does indicate in his affidavit that he said that information to Mr. Bates. But again, I think the testimony is clear based upon Mr. Bates' own statement. He said, this didn't happen, I didn't do this, but yes, I would have told my officer in charge of this information. So I think the trial court got it correct in this situation that there are questions of fact, particularly given the severity of the allegations and the assertions that are in these two affidavits. If this panel declines to consider arguments raised for the first time in a reply brief, what is your position on the presence of factual disputes? That's part of the difficulty with the primary brief, is that they weren't willing to concede all of the facts at that point. And without being willing to concede the facts as they existed at the time in front of the trial court, then it deprives this court of, again, jurisdiction to review that issue. I don't think that's a, that's certainly not an issue. It's just a question with respect to the reply brief, which, again, we didn't have an opportunity to respond to the reply brief, but we're here. But I still contend that there are questions of fact. And despite whether or not they want to say that these are, you know, now we'll accept everything, these questions of fact do in fact establish a Brady violation and fabrication of evidence issue as well. I just wanted to very briefly touch on the heck issue as well. I know Brother Counsel didn't have an opportunity during his primary to talk about that. But this is, again, an issue that this court has been very clear on, that this court does not have jurisdiction over a heck argument on an interlocutory appeal. I think this court first held that in the Cheney-Snell case and then reiterated that opinion in the Salter case. Same thing with the collateral estoppel issue. This court indicated in Peterson that once you have an order of the state court that is vacated, then that collateral estoppel just isn't going to apply under those circumstances. That's, I think, very well established. It's also reiterated in, again, the Salter decision. Salter, I think, came out within the last year. What about the fabrication of evidence claim? Yes. There's a number of arguments made on that. What position do you take on whether that claim falls under the Fourth Amendment or the Fourteenth Amendment? The fabrication, I don't know that it was necessarily clear which one. So it's a good question. I believe I could be wrong. I believe it was brought in the complaint as a Fourth Amendment violation. I could be wrong on that. There were improbable cause lines. Yeah, right. But regardless, the trial court, I think, was correct in saying that this does create a question of fact with respect to the fabrication. There's no question that the affidavit of Frazier, he says, I contacted the prosecutor's office. I said I was willing to give some information with respect to a murder. And a detective came and spoke with him and said, here's what you're going to say. Here's who you are going to pin with this shooting. So they had pre-written out the statement. It was written in Bates' writing. It was hand-drawn. Yes, exactly. And his name is on the report as well. The other issue, I think, too, with respect to the qualified immunity, it's a difficult situation here, too, because the defense counsel below was asked specifically by the trial court, are you making any sort of argument that this was not a clearly established law? Absolutely not. It clearly recounts the fact that he disclaimed with knowledge, rising to the level of a waiver. Yes, and also that Brady applies to police officers. The trial court judge specifically asked that question as well. He said, no question. So I think those two issues are waived. Even if they weren't, though, we have a robust amount of case law from this circuit alone that holds that these types of cases are going to establish a Brady-derived claim as well as a fabrication claim. Even if it's not waived, I think it's clear that this type of claim should, in fact, go forward. I have a lot of time left. I don't know if the court has any... Speak to us about Legion's concurrent and unrelated sentence for a sexual murder. How does that impact his damages and deprivation of liberty elements? Right, yes. The trial court certainly held that there was a question of fact as to whether or not this actually extended his sentencing. Because he had been found guilty here, it extended his sentencing when he pled nolo contendere to the other charge. So the trial court certainly held that this was a question of fact as to whether or not this was an issue. So because of that, again, I think questions of fact are something that this court is not going to deal with on an interlocutory basis. I think I have made all of my points. I don't know if the court has any other questions, but I would be happy to... Thank you very much. Thank you very much. I appreciate your time. I, too, just have a few brief remarks, aside from answering any questions that you may have. As an initial matter, I think it's important to emphasize that in reference to the appellant's reply brief, qualified immunity was advanced as an argument in a principal brief. The court, in its 70-page thorough analysis, went through each piece of evidence, each officer. And so the reply brief is merely responsive to the analysis of the court, and I don't think that it's certainly not being raised for the first time. All of these issues... Would you agree, though, that in your opening brief you did not concede the version of the facts that are most favorable to the plaintiffs here? I think there are some challenges with the principal brief in all candor. And I think that, for example, and I think you might be specifically alluding to the affidavits, are we not conceding the truth of those affidavits because they're hearsay? Now, I think the law of this circuit is very clear that this court cannot resolve hearsay issues on the interlocutory qualified immunity appeal. Had I written that brief, I probably would not have postulated it in that particular fashion. I do believe firmly, however, for the reasons set forth in the reply, that accepting the truth of both affidavits, there are gaps in the record that, at least as it relates to Officer Hughes, really do fail to establish a constitutional violation. I want to circle back to something that Sister Counsel mentioned, the Frazier affidavit in the context of the Brady claim, which is that the court found that Officer Hughes is implicated, even though the affidavit merely references Officer Bates, because he took, according to Mr. Cotton, Officer Hughes walked, it was one of two officers who walked Mr. Frazier over to the jail. The other officer was Mr. Adams. And so the affidavit by Mr. Frazier states that, well, the A officer showed me Mr. Cotton and a picture of Mr. Cotton to help me identify him, but there's no other evidence in the record to show that there were two officers who took him over to the court. Which officer is it? Is it Officer Adams or is it Officer Hughes? And I think that just speaks to the fact that there's a gap. And I think this court has held before that one cannot, that hypothetical scenarios or suppositions aren't entitled to be accepted as true. And I think what we have with respect to the Frazier affidavit in the context of the Brady claim, it is supposition and hypothetical possibility. But perhaps more importantly, again, that piece of evidence, in my mind, is a fabrication claim. And that's how I dealt with it in the reply. I dealt with it as a fabrication claim, because it's fundamental. Unlike Mills, where this court said, okay, you've got to plead these two claims differently, in Mills there were facts that supported both the fabrication and a Brady claim. Here, I don't know how one can look at the Frazier affidavit and infer a Brady claim from that, a withholding, a suppression claim. It is a fabrication claim. It's, hey, I testified falsely and Officer Bates helped me testify falsely. So I say that to say that the Brady claim predicated upon that piece of evidence really ought to be dismissed. And I also note that the fabrication of evidence claim against Officer Hughes, predicated upon that same piece of evidence, was in fact dismissed. And that is not being challenged on appeal. As it relates to the liberty issue in the malicious prosecution context, or malicious prosecution claim, the record clearly established that Plaintiff Legion served a concurrent second-degree murder sentence that was independent of the wrongful conviction and covered the entirety of the wrongful conviction. Now, again, this comes back to- serving time. There was supposition. Well, he may have been let out early. Had he not had the convictions that we're dealing with here today, that somehow, someway, maybe he would have been let out. But what I would respectfully submit is that one has to come forward with proof that one could reasonably infer from that proof that, yeah, he could have been released earlier had it not been for this other sentence. But we don't have that. We just have a hunch, a- Perhaps a dispute? Well, here's the thing. I think that, and this Court has held, in other cases, including Chappell v. City of Cleveland, and in the- well, and specifically the Chappell case where- Turner v. Scott, I think, is the other case- that courts are not- a legal issue is presented in the context of an interlocutory appeal if the facts- if the district court finds that there's a factual dispute, this court can say they're not genuine and they're not material. And so I would respectfully submit that hypothetical facts, suppositions, are neither genuine or material. They're not entitled to be accepted as true. But that is all I have, unless there's any questions that this Court may have for me. Questions, Judge Strang? No. Okay, thank you. Thank you. Counsel, thank you for your preparation and for your arguments. The case will be submitted.